will begin with argument from the appellant, Ms. Knox. Good morning. May it please the court. Kelly Ebmeyer was subjected to unconstitutionally excessive force while in the custody of the IDOC. And despite allowing Ebmeyer's claims to serve as evidence   Kelly Ebmeyer was found not guilty. In order to survive an initial merits review, the court dismissed Ebmeyer's claims on erroneous procedural grounds. First, the district court dismissed Ebmeyer's claim against Adam Brock as a sanction for Ebmeyer's failure to disclose information relevant to the identification of the DOE defendant. This was an abuse of discretion for two reasons. First, contrary to precedent from this court, the district court failed to find that Ebmeyer willfully abused the judicial process or acted in bad faith before imposing the extreme sanction of dismissal with prejudice. I'm going to stop right there, Ms. Knox, because in her order denying the motion to reconsider, the district judge characterizes his conduct in withholding the name as willful and in the rule to show cause, she refers to it as a possible fraud. She notes the delay it caused as well as the inconvenience to the defendants. And she seems rightly irritated that he repeatedly claimed that the defendants actively hid the identity of the Orange Crush members when it was he who was withholding the information. If we consider the rule to show cause along with the order dismissing the case and the order denying reconsideration, why would that not be enough to justify the dismissal? Sure, Your Honor. I think at best the district court really only found an inconsistency. The district court found that Ebmeyer's deposition testimony that he disclosed Brock's first name as soon as possible was inconsistent with his earlier testimony that he knew the name. But that's not really, there's no real contradiction here. Ebmeyer had believed that he needed to know the Doe defendant's full name before identifying him. And then once he saw that there was only one Adam on the list of officers working on the day of the incident, he deduced that it was Adam Brock. Why would he have asked? Is it all right if I only have a first name? I think that for a pro se to misunderstand the importance of a first name and to misunderstand the court's order and what the court required is not unusual. Certainly in this case, Ebmeyer had every incentive to reveal that information had he thought that it was relevant or important or would be helpful to the court. He's not the average pro se, is he? I don't, I mean, we do not often see defendants with college degrees, much less graduate school in, you know, this sort of a situation. How could he possibly have misunderstood a directive to tell the court everything he knew about John Doe's identity? Well, the court didn't exactly say it as explicitly as that. Instead, in this June 21st, 2017 docket order denying the motion the first motion to substitute, the court stated, quote, if plaintiff renews his motion, he should provide as much information about the John Doe defendant as possible including a physical description. And based on that, Ebmeyer understood this to be, you know, a helpful advice from the judge guiding him on how to, you know, engage with the legal process moving forward and he focused on the physical description aspect of this. He didn't understand the relevance of the first name. And so, that being the case, you know, this court has found that where a pro se disobeys court orders because of an innocent misunderstanding or lack of familiarity with the law, sanctions aren't warranted. And let alone the straconian sanction of dismissal with prejudice. So, I want to go back to the court's order and just note that even if there were a contradiction, that standing alone would not be enough to find willful misconduct or bad faith. Again, pro se litigants frequently make inconsistent statements. They have no experience with the legal system. And those inconsistencies are more likely the result of an innocent mistake, the result of faulty memory, or an imprecise expression. And at any event, the question before the court really was whether Edmire's failure to reveal Brock's first name was in bad faith. And the court didn't answer this question at all. And the record doesn't support it. Again, Edmire had every incentive to reveal the name of the no defendant had he thought that the court wanted it or that it was relevant. He had no practical advantage to not disclosing the name. In addition, the misunderstanding here makes more sense when you look at the language of the district court's orders. Again, the district court said that he should provide as much information about the no defendant as possible. And nothing about that order would have put Edmire on notice that if he did not reveal every single thing he knew about the no defendant, his case could be dismissed. And again, given the court's focus on the physical description, it's understandable that Edmire subsequently filed a motion providing just that, the physical description of the no defendant. Additionally, this dismissal was particularly erroneous for two additional reasons. First, as we've discussed, plaintiff was a prisoner and wasn't represented by counsel. And rather than take that into account in Edmire's favor, the court held it against him. She found that dismissal was warranted explicitly because he was an IFP. And appellees concede as much on page 17 of their brief. And yet the court got it exactly backwards in doing that. It essentially created a two-tiered system of justice. And although other district courts have done the same, this court has made clear that that's not the right approach. In Evans, cited in both the opening brief and reply, this court rejected that lesser sanctions could not be effective against a plaintiff proceeding IFP. And yet the court expressedly saying that dismissal was the only effective sanction because he was proceeding IFP. So even if the court thought that some sanction was appropriate here, it should have considered one of the other alternatives before dismissing the case. And second, despite appellee's speculation that Edmire fabricated his knowledge of the defendant's first name, Brock never denied that he was the prison guard at issue or that he did what he was alleged to have done. This just can't be the case where the court thought that the plaintiff named the wrong person as the DOE defendant. And if that is what animated the court, then that's even more reason to reverse and to remand. The court nowhere mentioned that it had thought that Edmire fabricated this testimony. And Brock never denied that it was him who handcuffed Edmire. He only denied wrongdoing. And in any event, had the court thought that Edmire fabricated his testimony, the sanction of dismissal was not the right remedy. That would be summary judgment. And finally, no inference of bad faith or willful misconduct is appropriate here. At least two other circuits have found that the district court must explicitly make an explicit finding of bad faith or willful misconduct before imposing sanctions under its inherent power. And the cases on which appellees rely from this circuit to suggest that an inference is appropriate are consistent with those other cases. In both cases, the district court made explicit findings of bad faith or willful misconduct. And I'd like to move to the second issue here, the exhaustion of remedies issue. And here, because Edmire reasonably contested the availability of remedies, the district court erred by not conducting an evidentiary hearing. It is not enough for appellees to argue that Oelberg's conduct would not have deterred a similarly situated prisoner of ordinary firmness from filing a grievance because a hearing would have provided clarity on, for example, why Edmire feared Oelberg. The district court could have elicited information or evidence, rather, regarding Edmire's history with Oelberg, if he had any, and Oelberg's conduct would have provided more insight into the reason that Edmire feared retaliation if he continued to press the issue. These background facts are pertinent, and the district court failed to follow this court's instruction in Pavey and Lynch to hold a hearing under such circumstances. And contrary to what appellees argue here, Edmire didn't forfeit this issue. He plainly raised it below in his declaration in opposition to their defendant's motion for summary judgment. In addition, even if this court finds that the sanction of dismissal was not an abusive discretion, there is still no forfeiture. Edmire's claim against Oelberg is completely unrelated to the claim against Adam Brock. So there can be no prejudice to Oelberg from the alleged conduct underlying the sanction of dismissal against Brock. And additionally, there's no indication that Edmire let his case die in an attempt to seek interlocutory appeal through other means. Rather, the opposite is true. He diligently pursued his case until the court dismissed it as a sanction. If the court has no other questions, I will reserve the rest of my time for rebuttal. Thank you, Ms. Knox. Mr. Turner, we'll start with you. Thank you, Your Honors. Can you hear me? Yes, we can. Great. Good morning, Your Honors. Counsel, may it please the court. I'm Christopher Turner, the Assistant Attorney General here on behalf of the defendant's appellees. This court should affirm the judgment entered against the plaintiff, Kelly Edmire, because the district court properly exercised its discretion dismissing Edmire's case as a sanction for Edmire's judicial process and his deceit on the court by withholding the first name of his John Doe defendant for almost two years of litigation, while suggesting to the court in his filings that he did not have that information. Where would you find the district court giving adequate consideration to any remedy other than a dismissal? I mean, is this essentially a penalty for the poor because they can't afford monetary sanctions? Couldn't she have fined him for some small amount that was meaningful to him? Your Honor, it was within her discretion to impose a different sanction, but it wasn't required. It wasn't an abuse not to do that. Certainly, she considered monetary fines and consistent with this court's prior decisions, whether it's the Hoskins decisions or the Secrees decisions, where she decided that it wouldn't be appropriate for him. It wouldn't be an adequate punishment. But she decided it wasn't appropriate because of the nature of his conduct, of his misconduct. She found that he had willfully withheld the first name for a year of litigation, which was an act that he conducted and allowed for the sole purpose of identifying that John Doe defended. She made an implicit finding that this was a calculated effort to abuse the judicial process. And so not just a fraud on the other parties, but a fraud on the court itself. And because of that, that's the reason she believed that the sanction of dismissal of prejudice was the appropriate sanction. She did consider the other one of giving a monetary fine, but this court has recognized before that such a fine often will not be adequate punishment. I'm not aware of any authority, whether it's the Evans v. Griffiths case or any other, that requires the court to lay out a catalog of all the other possible sanctions and then to go through and discuss why they're not appropriate. In return to her decision, as I explained, it was within her discretion because she wanted to impose a sanction because of this dilatory conduct over this 11-month period. From the beginning of the period, she had dismissed his other claims under the summary judgment ruling and let him know, I'm going to allow you to proceed against the John Doe defendant for the sole purpose of identifying that Doe defendant. She was going out of her way to assist him in this, but she also warned him that I may dismiss this case after 60 days, which would also be within her discretion given the amount of time now he hasn't served the defendant, unless you either identify him or can show me good cause otherwise. That is, to show that he was diligently trying to identify the defendant and still had some hope of being able to do so. His conduct over then, the next 11 months, showed that he repeatedly withheld this information that he claims that he had. He claims that he knew this information before he ever filed his case. He knew the first name all along. He immediately within a few weeks filed a motion to substitute without providing any information at all, just basically arguing, let me substitute for the John Doe defendant because the defendants are purposefully concealing his identity from me. The judge then issued the text order, the June 21st text order, denying that motion but explaining, you have leave to refile, but you have to provide as much information as possible about the John Doe defendant. It was a very clear and plain instruction, consistent with what was obviously the entire purpose of that case. Then over the next several months he again, every court filing, whether it was his motion to compel after that, his reply in support of his motion to compel, each time or in this other motion to substitute when he provided the physical description, he in each time implied that he had no other information, accused the defendants of concealing the identity of the John Doe defendant and then actually in the motion to compel sought fees against reasonable expenses against the defendants. The only time that he finally came forward with the actual information that was Adam Brock was after the court in March 2017 I believe it was, March 2017 came forward and gave him 30 days and said, this is it. I'm dismissing the case now unless you do it. She knew at this point he had the roster of all that the defendants had provided months before they had highlighted on it everyone fitting description and then he came forward with the name. When she found out on the subsequent summary judgment briefing that in fact he claims that he knew this information all along, yes, the court was clearly frustrated and annoyed, more than just frustrated and annoyed, but he found that he had clearly been engaging in a deceit on the court this whole time, trying to avoid a dismissal of his case by implying that he had no other information while simultaneously withholding that information. So based on those findings, she dismissed his case with prejudice. Ed Meyer argues on appeal that she was required to make an explicit finding of bad faith or an explicit finding of willful abuse. The court is recognized in the context of rule 37 that you can infer that reviewing courts can infer such findings from the findings in the sanction order and it's also consistent with the other decisions which we cite regarding sanctions of dismissal under the inherent power. There's plenty of those cases do not have an explicit finding of bad faith or an explicit finding of willful abuse, whether it's the Sal Moran case, which just found that they  abuse. She also found that the discovery of the Hoskins case, which didn't refer to bad faith or willful abuse of process, instead found that his omissions could be characterized as a fraud on the court. And that is exactly what she did here. She explained in her order, she explained what her standard was, that she had the authority to sanction this case, including through dismissal, against a party who had perpetrated a fraud on the court. And then she immediately found that he'd been withholding this name during this entire 11 month period while simultaneously suggesting that he didn't have that information. Based on those findings, this court can infer that she in fact found that he engaged in a willful abuse of the process that warranted the dismissal with prejudice. Where did the district court consider the argument that he made in his declaration that the grievance process was not available to him on the strip search claim because he tried to complain orally and the officer immediately and violently retaliated? If we construe prosaic pleadings liberally, where is the analysis of that claim? Your Honor, that's going to his challenge to the prior summary judgment. The court did not address that argument because he didn't raise it, Your Honor. He didn't raise the argument either in his brief or in his declaration. He did repeat his claim in his grievances. So this is the opposition to summary judgment or failure to exhaust. In that opposition, he did raise an argument saying that he both said the argument that he had raised his, he in fact had, there was a genuine issue of fact that he in fact had raised these claims in his grievances. Then he also raised an argument that the grievance process was unavailable, but only the reason he articulated was because the grievance process didn't offer any kind of appropriate relief for him. That was the argument he made. In his declaration, he repeats his allegation of excessive force, but he never there artfully or otherwise raised to the court or alerted the court to an argument he was making that the grievance process was unavailable because he felt a fear of reprisal from Olberg. The argument wasn't there. That was the reason that neither the defendants nor the court addressed that argument. Now, if the court still believes that it should address the argument on appeal, he still didn't raise facts that would be sufficient to show that the grievance process was unavailable under the objective standard that this court has adopted in cases like Caba v. Steppe and Schultz v. Pew. In those cases, the standard is that you will only find that threats or other kinds of intimidation can render the grievance process unavailable, thereby excusing a failure to exhaust your administrative remedies in circumstances where a person of ordinary firmness under those circumstances would have been deterred from filing a grievance and considered the grievance process unavailable. Here, there's no cases that show that merely that excessive force itself, just imposing excessive force, or even here where they tried to make an attenuated connection, that because he had briefly raised an objection during a shakedown that the alleged assault took place, that that could constitute or raise a genuine issue of fact that there was a fear of reprisal under the objective standard. Instead, this case is like McBride v. Lopez, the recent 9th Circuit decision, where they had found that such pleadings weren't even enough to state a claim on the pleadings. There, in that case, it was a group of guards that had beaten him. I'm sorry, Your Honor, were you going to ask a question? Well, I think that was some feedback. Oh, okay. Thank you. Thank you. It's like the McBride case, where there was an alleged assault that had taken place by several guards, and in contrast to our case, there was then also allegations about them coming afterwards, saying, you're lucky, it could have been a lot worse for you. Here, there is no, he made no allegations in his declaration that Olberg had said anything to him at all. The allegation is, his underlying allegation, that excessive force had taken place, that he had assaulted him. But there is no sort of connection to some sort of threats or intimidation that if you used a group of guards... Well, I mean, what there was from his point of view, was immediate, horrible retaliation, and that he didn't feel he could proceed further. You know, why would there not be in his claim in the declaration a material fact as to whether exhaustion was available to him? That's why we have Pavey findings, Pavey hearings. Well, Your Honor, the Pavey hearings only required if, in fact, the plaintiff raises the genuine issue of material fact, and we don't believe the declaration does. Yes, the alleged conduct was awful. The assault is awful, but it wasn't connected to any sort of threat about if he used the grievance system in the future, or if there was any sort of use of it. It isn't like in the Kaba v. Stem case, where this court found such a genuine issue of fact. But he was grieving at the time, you see. Was he not? All he did was basically raise an objection during a shakedown. But that doesn't... Because an assault allegedly took place at that point in time, that doesn't create a connection that, therefore, the assault is somehow a threat of retaliation in the future, versus like the Kaba case, where he made a formal notice of complaint, and then the group of guards allegedly ambushed the inmate and told him, we are coming after you because we know you filed that notice of complaint. In your view, it isn't even arguable that he started the grievance process when he asked Olberg if it was necessary to use the baton in the way he had. And the allegation is that Olberg shuts down the conversation pretty quickly by doing what he did. Episcopal manifestation. But, Your Honor, he wasn't engaging. We don't believe that he was engaging in the formal grievance process. It wasn't some sort of facts that could raise a genuine issue that he was retaliating for him engaging in or trying to use the grievance process. This isn't a case where they've come after him for filing a notice of a grievance. If you deprive the process, here's what's going to happen. We're going to beat you up. We're going to make your life a living hell, or we're going to file a false claim against you. Well, he already had made his life a living hell, if you ask me. If it was, you know, if the allegation is true. But this conflates, though, Your Honor, the underlying allegation with what courts have recognized that there can't be an exception to the exhaustion process. If Ed Meier can basically evade the exhaustion process, just based on his allegations of the excessive force, then it's going to create a new exception to the exhaustion requirement for inmates. That when they make excessive force claims, essentially, that they can also, therefore, just immediately have a paid hearing on whether or not that creates a fear of retaliation that would render the process unavailable. Instead, the courts, so far at least, have only recognized this exception in areas where you have some sort of intimidation or fear, a clear record connecting the action itself with a threat, a threat of reprisal, some sort of threat that is connected with the formal grievance process, Your Honor. And they simply haven't raised those kinds of allegations here. So, we also, as he said, we don't believe, the court never addressed this issue because we don't believe that he had raised it before and so forfeited it. We also believe he doubly forfeited it because he had, because of his litigation misconduct with regards to the second claim against the John Doe defendant and Mr. Brock, that he needed to reverse that claim if he wanted to address the prior interlocutory rulings. If I can return now to the first issue of the abuse of power. As we explained, there is no requirement we can see in any of the case law that says that the court was required to run through the catalog of possible other alternative sanctions. Instead, she found that this was the only appropriate sanction under the facts of the case, which is consistent with what the Evans v. Griffiths case said. The Evans v. Griffiths case that they cite addressed a refusal to answer questions at a deposition. And in that case, it did say that, hey, this is a minor sanction. It will often be for, sorry, for indigenous plaintiffs as well as any other plaintiff, lesser sanctions may be effective and appropriate, but it depends on the circumstances of the case. There, obviously, if someone's refusing to answer a question or refusing simply to provide something to discovery, a threat or perhaps a minor sanction can deter them and basically force them to comply or face dismissal. Here, the action had already happened. The abuse of the process had already been going on for 11 months. And he had dragged down the litigation, which was there for the sole purpose of identifying the DOE defendant. That's why the court concluded that the only appropriate sanction would be dismissal with prejudice. So unless the court has any other questions, then I would just ask that they affirm the judgment against Mr. Edmire based on the evidence. Thank you. Thank you. Ms. Dox, we'll go back to you now for rebuttal. Thank you, Your Honor. I just want to address a couple of issues and points that Mr. Turner addressed. First, Mr. Turner says that Edmire waited 11 months during which the court allowed for Edmire to discover the DOE defendant's name. But I think that ignores the fact that at least five months of that was Mr. Edmire waiting for defendants to respond to his discovery requests. And even more, if you give credence to Edmire's statements, that he didn't receive the roster until February of 2018. So it's not quite 11 months. I also want to touch on what Your Honor, Judge Roehner said earlier, and I think you hit the nail on the head here, that the judge is not required to run through a litany of other sanctions before deciding to dismiss a case.  a litany of other sanctions before deciding to dismiss a case, the district court does have to explain why those sanctions wouldn't be effective. And here, the district court's only explanation was that Mr. Edmire was proceeding in form of papyrus. That's not sufficient under this court's precedent and would in fact create, like I said earlier, a two-tiered system of justice where those who can afford financial sanctions would be allowed to proceed in the face of the exact same conduct, where an IFP plaintiff would not. Third, I want to touch on Mr. Turner's characterization of Salmoron and Hoskins. Neither of those is comparable to the conduct alleged here, or claimed here. In Salmoron, the plaintiff intentionally disclosed attorneys' eyes-only documents to three separate sources, and the court expressly found that there could have been no excuse for that, and it was plainly deliberate. And in Hoskins, the court found that the plaintiff had omitted his litigation history on his IFP forms despite clear and explicit instructions on the form to provide all of his litigation history. That's quite different from here, where again, there's no indication that Edmire's conduct was intentional or deliberate, and he had no benefit from deliberately failing to reveal the DOE defendant's first name. On the summary judgment point, I want to address two things. First, the court did not address the availability of remedies in the summary. I'm sorry, the defendant, in the face of Edmire's raising the issue in his declaration, did not reply and say anything or provide any evidence as to why his claim, why he would have had remedies available to him. So the district court had only before it, Edmire's declared statement that he feared reprisal based on Uylberg's conduct. In his declaration, he said, quote, he felt it was in his best interest to not further try to resolve the grievance. And as to Mr. Turner's point, that no similarly situated prisoner of ordinary firmness would have been dissuaded from filing a grievance, I think that's exactly the point of hearing. All we have here is Edmire's uncontroverted testimony that when he complained, Uylberg struck him with a baton and squeezed his testicles so hard that it caused him nausea and made walking difficult. As I said earlier, there's other evidence that the district court could have solicited if it thought necessary to satisfy the objective standard by conducting a payee hearing. And again, for example, whether Edmire had any history with Uylberg or whether Uylberg had some kind of reputation at the prison that would have made it such that any other prisoner would have done the exact same thing. And second, I guess just to reiterate the point, we can't say for sure without a hearing whether an objective, whether under the objective standard, Edmire would have been deterred from filing a grievance. This is a matter of procedural failure and the process matters, particularly in cases involving important civil rights cases and the district court should have held a hearing here. And if there are no further questions, I cede the remainder of my time. Thank you, Mr. Turner. Thank you, Ms. Knox. Ms. Knox, you are appointed counsel and you go with the thanks of the court for your and your law firm's work on this Thank you to both counsel and the case will be taken under advisement.